```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3-20-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RICHARD SCHAEFFER, SHAF HOLDINGS
LLC and SCHAEFFER HOLDING LLC,

                                        Plaintiffs,                        12 Civ. 8576 (PKC)

                    -against-                                              MEMORANDUM
                                                                           AND ORDER

DEBORAH KESSLER and DANIEL
KESSLER,

                                        Defendants.
-------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiffs Richard Schaeffer, Shaf Holdings LLC, and Schaeffer Holdings LLC

bring an action against defendants Deborah Kessler and her husband, Daniel Kessler.  In the

amended complaint ("complaint" or "Compl."), plaintiffs allege that Mr. Schaeffer employed

Ms. Kessler as his personal assistant and Mr. Kessler as his attorney.  Plaintiffs allege that the

Kesslers conspired to fraudulently obtain equity interests in three entities controlled by Mr.

Schaeffer.  They allege, among other things, that Ms. Kessler, in pursuing this fraudulent

scheme, destroyed computer files in violation of the Computer Fraud and Abuse Act ("CFAA").

18 U.S.C. § 1030.  They also allege state-law claims, including fraud against both defendants and

legal malpractice against Mr. Kessler.

        Both defendants move to dismiss the complaint under Rules 12(b)(6) and 9(b),

Fed. R. Civ. P.  Ms. Kessler argues that the claims against her for conversion, violation of the

CFAA, fraud, and declaratory relief should be dismissed as duplicative of the claim against her

for breach of her duty of loyalty to Mr. Schaeffer.  She also argues that the CFAA claim fails to

state a claim upon which relief can be granted.  Mr. Kessler argues that the fraud claim against

him should be dismissed as duplicative of the legal malpractice claim against him and that the malpractice claim should be stayed pending resolution of related issues in a state-court action initiated by Ms. Kessler.  He also argues that the complaint should be dismissed for lack of subject matter jurisdiction if the CFAA claim is dismissed.  Finally, both defendants argue that the fraud claim is not pleaded with the particularity required under Rule 9(b), Fed. R. Civ. P.

For the reasons set forth below, defendants' motions are denied.

BACKGROUND

The following facts are taken from the complaint and are assumed to be true for the purpose deciding defendants' motions to dismiss.  All reasonable inferences are drawn in favor of plaintiffs, the non-movants.

Richard Schaeffer is the Executive Chairman of Liquid Holdings Group LLC ("Liquid"), a financial services company.  (Compl. ¶¶ 12, 27.)  He was formerly, among other things, the proprietor of Harbour, a Manhattan restaurant.  (Id. ¶ 17.)

Deborah Kessler began working at Harbour as a hostess and bartender in 2009. (Id.)  After Harbour closed, Mr. Schaeffer continued to employ Ms. Kessler as a personal assistant whose responsibilities included scheduling meetings, coordinating travel, organizing incoming mail, and, eventually, handling Mr. Schaeffer's finances.  (Id. ¶¶ 19, 20.)  In 2011 and 2012, Mr. Schaeffer increased Ms. Kessler's responsibilities to include acting has his representative in meetings with business associates and assisting with other business matters. (Id. ¶ 23.)  Ms. Kessler continued to work for Mr. Schaeffer in April 2011, when Mr. Schaeffer and Brian Ferdinand began a business venture that became Liquid.  (Id. ¶¶ 24-26.)

Through Ms. Kessler, Mr. Schaeffer became personally and professionally acquainted with her husband, Daniel Kessler, an attorney with the law firm Connell Foley LLP

("Connell Foley"), whom Mr. Schaeffer retained to assist him with trusts-and-estates matters. (Id. ¶¶ 16, 22, 28.)

In early 2012, Mr. Schaeffer decided to give Ms. Kessler a fraction of his interest in Shaf Holdings LLC ("Shaf Holdings"), which held a portion of Mr. Schaeffer's interest in Liquid, and requested that Mr. Kessler amend the Shaf Holdings operating agreement to accomplish this.  (Id. ¶¶ 29, 30.)

On March 20, 2002, Mr. Schaeffer executed a retainer agreement, dated February 17, 2012, sent to him by Mr. Kessler on Connell Foley letterhead (the "Retainer Agreement"). (Id. ¶ 31.)  Unbeknownst to Mr. Schaeffer, Mr. Kessler also drafted a "Conflict Waiver" on Connell Foley letterhead, dated February 17, 2012, that purported to waive any conflict of interest stemming from the relationship between the Kesslers.  (Id. ¶ 32.)  The Conflict Waiver refers to Ms. Kessler as Mr. Schaeffer's "junior partner" and states that Mr. Schaeffer and Ms. Kessler "have entered into an agreement whereby she receives a one-tenth (1/10) interest in any business venture that you work on collectively."  (Compl. Ex. B.)  Mr. Schaeffer alleges that he never received, reviewed, discussed, or signed the Conflict Waiver, and that he first discovered its existence when reviewing his files after Ms. Kessler's resignation in September 2012. (Compl. ¶¶ 34, 53.)  Based on discrepancies between the Retainer Agreement and the Conflict Waiver, the complaint alleges that Mr. Schaeffer's signature on the Conflict Waiver was forged by the Kesslers.  (Id. ¶ 33.)

A third agreement dated February 17, 2012 purported to give Ms. Kessler a percentage of Mr. Schaeffer's interest in Liquid, while also purporting to waive any claims against Mr. Kessler based on his conflict of interest (the "February 17 Agreement").  (Id. ¶ 35.) The February 17 Agreement states that it supersedes an earlier agreement dated August 10, 2011

3

(the "August 10 Agreement").  (Id. ¶ 37.)  Before Ms. Kessler's recent state-court filing, which attached the February 17 Agreement and the August 10 Agreement as exhibits, Mr. Schaeffer alleges that he had never seen the agreements, neither of which he knowingly executed but each of which contains what purports to be his signature on a separate page.  (Id. ¶¶ 35, 36, 38.)  The complaint alleges, on information and belief, that the Kesslers intentionally placed the signature line of the February 17 Agreement on a separate page and fraudulently caused Mr. Schaeffer's signature to appear on that page.  (Id. ¶ 35.)

Unaware of the Conflict Waiver, the February 17 Agreement, or the August 10 Agreement, Mr. Schaeffer alleges that he instructed Mr. Kessler to amend the Shaf Holdings operating agreement to give Ms. Kessler a 9% interest in Shaf Holdings, but Mr. Kessler ignored those instructions and drafted an agreement purporting to give Ms. Kessler a 10% interest instead; Mr. Schaeffer executed the agreement believing that it had been drafted in compliance with his instructions.  (Id. ¶¶ 40-42.)

The complaint also alleges, on information and belief, that Mr. Kessler drafted an operating agreement for Schaeffer Holdings LLC ("Schaeffer Holdings") that purported to give Ms. Kessler a 9% interest in Schaeffer Holdings after Mr. Schaeffer had rejected a proposal to give her such an interest.  (Id. ¶¶ 45, 47.)  When Mr. Schaeffer refused to sign this agreement, Ms. Kessler forged or fraudulently caused Mr. Schaeffer's signature to appear on the agreement anyway.  (Id. ¶¶ 49, 50.)  The complaint further alleges, upon information and belief, that Mr. Kessler was aware that Ms. Kessler forged or fraudulently caused Mr. Schaeffer's signature to appear on the agreement.  (Id. ¶ 52.)  It was only after Ms. Kessler resigned, in September 2012, that Mr. Schaeffer discovered a copy of the fraudulent Schaeffer Holdings operating agreement. (Id. ¶ 53.)

In or about early September 2012, shortly before resigning, Ms. Kessler allegedly shredded large quantities of documents and deleted a large number of computer files related to her employment for Mr. Schaeffer and his business dealings; other documents she allegedly stole. (Id. ¶¶ 56, 58.) Then, immediately after resigning on September 4, 2012, she went to Mr. Schaeffer's personal downtown office, where Mr. Schaeffer discovered her going through his files and, upon information and belief, accessing his computer. (Id. ¶¶ 59, 60.) Ms. Kessler left with large bags, which she refused to have inspected, and Mr. Schaeffer later discovered that hard copy files related to Shaf Holdings and Schaeffer Holdings were missing. (Id. ¶¶ 62, 63.)

On December 11, 2012, Ms. Kessler filed an action in New York Supreme Court, New York County, in which she seeks, among other things, to enforce the interests that plaintiffs here allege were fraudulently obtained. Deborah Kessler v. Richard Schaeffer, et al., No. 654336/12 (Sup. Ct., N.Y. Cnty.) (the "State Court Action"). (Compl. ¶ 6.)

DISCUSSION

I.  Pleading Standards

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b), Fed. R. Civ. P.  To plead a fraudulent misstatement, "the plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012) (citation and quotation marks omitted).  Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Rule 9(b), Fed. R. Civ. P., a plaintiff alleging fraud must plead facts giving rise to "a strong inference of fraudulent intent."  Acito v. IMCERA Grp. Inc., 47 F.3d 47, 52 (2d Cir. 1995).  This may be accomplished "by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996).

## II.  Duty Of Loyalty (First Claim)

Plaintiffs' First Claim alleges that Ms. Kessler breached her duty of loyalty to Mr. Schaeffer as his employee.  Ms. Kessler does not move to dismiss this claim.  She argues, however, that several of the other claims against her should be dismissed because they are duplicative of the duty-of-loyalty claim, which she argues is a contract claim.  See Clark-Fitzpatrick, Inc. v. Long Island R.R Co., 70 N.Y.2d 382, 389 (1987) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").  As explained below, the Court rejects the premise that the First Claim is a contract claim.

Although "[t]he employer-employee relationship is one of contract, express or implied," W. Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (1977), "New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency . . . ." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003); see Brenner, 41 N.Y.2d at 295 ("[T]he relevant law is that of master-servant and principal-agent.").  Under New York law, "an employee is to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Brenner, 41 N.Y.2d at 295 (citation and quotation marks omitted).  "This duty is not dependent upon an express contractual relationship, but exists even where the employment relationship is at-will." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 521 (S.D.N.Y. 2011) (Katz, M.J.) (citing Phansalkar, 344 F.3d at 200); see Camp Summit of Summitville, Inc. v. Visinski, 06 Civ. 4994 (CM), 2007 WL 1152894, at *13 (S.D.N.Y. Apr. 16, 2007) ("It is well-settled under New York law that all employees owe a duty of loyalty to their employers, regardless of whether the employee has a formal employment contract.").

Here, there is no indication in the complaint that Ms. Kessler had an express employment contract with Mr. Schaeffer.  The Court therefore assumes for purposes of Ms. Kessler's motion to dismiss that she was an at-will employee, bound by the duty of loyalty as Mr. Schaeffer's agent but not by contract.

III. Conversion (Second Claim)

Ms. Kessler argues that the Second Claim, for conversion, impermissibly duplicates the First Claim, for breach of Ms. Kessler's duty of loyalty, because, in her view, the complaint fails to allege that she violated any duty independent of those imposed upon her as Mr.

Schaeffer's employee. This argument fails because, as explained above, the duty-of-loyalty claim is not a contract claim. But even if the duty-of-loyalty claim were a contract claim, the argument would still fail.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp., 64 A.D.3d 85, 113 (2d Dep't 2009). Where the plaintiff's right of ownership is independent of any contractual relationship between the parties, a claim for conversion will lie, regardless of whether there is also a viable claim for breach of contract. See id. (holding conversion claim for material excavated in excess of contractual right was based on duty separate from breach-of-contract claim based on excess excavation). Cf. Interstate Adjusters, Inc. v. First Fid. Bank, N.A., 251 A.D.2d 232, 234 (1st Dep't 1998) (dismissing conversion claim as duplicative of contract claim where conversion claim was based only on allegation that defendant received money under the contract and failed to remit payment to the plaintiff).

Here, plaintiffs' conversion claim alleges that "Ms. Kessler converted files belonging to Mr. Schaeffer, Shaf Holdings and Schaeffer Holdings." (Compl. ¶ 78.) Although the duty-of-loyalty claim also alleges that Ms. Kessler stole and destroyed documents belonging to Mr. Schaeffer and his companies (id. ¶ 74), this is hardly the focus of the claim, which alleges, among other things, that Ms. Kessler was a "faithless servant" who "attempted to defraud Mr. Schaeffer through her scheme to wrongfully obtain interests in Liquid, Shaf Holdings, and Schaeffer Holdings to which she was never entitled." (Id. ¶¶ 68, 75.) In any case, Ms. Kessler's duty to refrain from exercising dominion over Mr. Schaeffer's documents existed independently of the employment relationship between them—even if Ms. Kessler had been a perfect stranger

to Mr. Schaeffer, she nonetheless would have had a duty not to exercise unauthorized dominion over Mr. Schaeffer's papers.  Thus, the conversion claim is not duplicative of the duty-of-loyalty claim and Ms. Kessler's motion to dismiss the Second Claim is accordingly denied.

IV. <u>Computer Fraud And Abuse Act (Third Claim)</u>

The Third Claim alleges that Ms. Kessler violated the CFAA, 18 U.S.C. § 1030, when she "stole, deleted, altered, or destroyed computer files in furtherance of the Kessler's fraudulent scheme."  (Compl. ¶ 84.)

The CFAA is a criminal statute that provides, among other things, that "[w]hoever . . . knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . shall be punished as provided in subsection (c) of this section."  18 U.S.C. § 1030(a)(4).  The statute also provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  18 U.S.C. § 1030(g).

Ms. Kessler first argues that the CFAA claim is duplicative of the duty-of-loyalty claim.  Ms. Kessler cites no authority in support of the proposition that a federal statutory cause of action can be dismissed as duplicative of a state-law claim for breach of the duty of loyalty, nor is the Court aware of any.  This argument therefore fails.

Ms. Kessler also argues that the CFAA claim should be dismissed because Ms. Kessler, as Mr. Schaeffer's junior partner and employee, was entitled to access the computer system as she is alleged to have done.  In other words, Ms. Kessler argues that she did not access a protected computer without authorization or in excess of her authorized access.  18 U.S.C. § 1030(a)(4).  But even assuming that Ms. Kessler, as Mr. Schaeffer's junior partner and

employee, was authorized to access the files in question, there is no basis in the complaint for supposing that she was authorized to destroy files in the manner alleged in the complaint, and, indeed, the complaint alleges that she was "not authorized to delete or destroy Plaintiffs' computer files." (Id. ¶ 86.)  As used in the CFAA, "the term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Certainly the unauthorized deletion of files alleged here constitutes the "alter[ation] [of] information in the computer that the accesser is not entitled so to . . . alter . . . ." Id.  This reading is confirmed by the fact that a private right of action under the CFAA is available to "[a]ny person who suffers damage or loss by reason of a violation of this section," 18 U.S.C. § 1030(g) (emphasis added), where "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information . . . ." 18 U.S.C.A. § 1030(e)(8).  This definition logically includes the deletion of computer files.  See, e.g., Cohen v. Gerson Lehrman Group, Inc., 686 F. Supp. 2d 317, 325 (S.D.N.Y. 2010) (Castel, J.) (holding employer's allegation of unauthorized "mass deletion" of files by employee stated claim for relief under the CFAA).

        Ms. Kessler cites cases supporting the proposition that the CFAA does not apply where an employee uses his authorized access to a computer system to misappropriate his employer's information.  See, e.g., Univ. Sports Pub. Co. v. Playmakers Media Co., 725 F. Supp. 2d 378 (S.D.N.Y. 2010); Orbit One Communications, Inc. v. Numerex Corp., 692 F. Supp. 2d 373 (S.D.N.Y. 2010); see also United States v. Nosal, 676 F.3d 854, 857 (9th Cir. 2012) (characterizing the CFAA as an "anti-hacking statute").  As explained above, the complaint adequately alleges that Ms. Kessler's access exceeded her authorization within the meaning of the statute.  Any argument to the contrary is a factual dispute not properly addressed on a motion

to dismiss under Rule 12(b)(6), Fed. R. Civ. P.  Thus, Ms. Kessler's motion to dismiss the Third

Claim is denied.[1]

## V.   Fraud (Fourth Claim)

Both defendants advance a number of arguments why the fraud claim should be

dismissed.  Although the Court views the matter somewhat differently than the parties, the Court

concludes that none of the alleged misrepresentations or omissions in the complaint states a

common-law fraud claim for damages under New York law.  Nonetheless, the Court construes

the fraud claim as a claim for fraud in the execution that, if proven, would be a predicate for a

declaration of invalidity concerning each allegedly fraudulent agreement.  See Rule 8(e), Fed. R.

Civ. P. ("Pleadings must be construed so as to do justice.").

### a.   The Complaint Fails To State A Claim For Common-Law Fraud

Under New York law, the elements of common-law fraud are "defendant's

knowing misrepresentation of a material fact, made with intent to deceive, plaintiff's reasonable

reliance, and damages."  Salles v. Chase Manhattan Bank, 300 A.D.2d 226, 228-29 (1st Dep't

2002).

The closest the complaint comes to pleading common-law fraud is the allegation

that Ms. Kessler, with the intent to deceive, "led [Mr. Schaeffer] to believe" that the Shaf

Holdings operating agreement drafted by Mr. Schaeffer gave her a 9% interest instead of a 10%

interest, and that Mr. Schaeffer relied on this material misrepresentation to his detriment in

signing the document.  (Compl. ¶¶ 41, 108.)  Although the complaint does not indicate what

words, if any, Ms. Kessler used to represent to Mr. Schaeffer that the document had been

_____

[1] This conclusion disposes of Mr. Kessler's argument that subject matter jurisdiction is lacking.  The Court has subject matter jurisdiction over plaintiffs' federal claim under 28 U.S.C. § 1331.  The Court exercises supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

11

properly drafted, this is not necessarily fatal to the claim, as Ms. Kessler may have had a duty to speak as Mr. Schaeffer's trusted personal assistant.  See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995) (applying New York law) (An "affirmative duty to disclose material information may arise . . . from a fiduciary or confidential relationship between the parties.").  Nonetheless, the allegations that Ms. Kessler misrepresented the contents of the Shaf Holdings operating agreement and that Mr. Schaeffer relied on this material misrepresentation to his detriment at most plead fraud in the execution, not common-law fraud.

Fraud in the execution, also known as fraud in the factum, is a defense to enforcement of an agreement where the "defendant was induced to sign something entirely different than what he thought he was signing." First Nat. Bank of Odessa v. Fazzari, 10 N.Y.2d 394, 397 (1961); accord Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997) ("'Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" (quoting Restatement (Second) of Contracts § 163 comment a (1981))).  It is only a defense to enforcement where the signer was not negligent in failing to read the document he signed.  See Fazzari, 10 N.Y.2d at 397; Sorenson v. Bridge Capital Corp., 52 A.D.3d 265, 266 (1st Dep't 2008) ("Plaintiff's negligent failure to read the agreements prevents him from establishing justifiable reliance, an essential element of fraud in the execution.").  If established, fraud in the execution renders the instrument void ab initio.  See Dalessio v. Kressler, 6 A.D.3d 57, 61 (2d Dep't 2004) (citing Mix v. Neff, 99 A.D.2d 180 at 182 (3d Dep't 1984)); accord Hetchkop, 116 F.3d at 32.  It is

distinguished from fraud in the inducement, which renders an agreement merely voidable.  <u>See</u> <u>Mix</u>, 99 A.D.2d at 182.

Although plaintiffs do not use the terms "fraud in the factum" or "fraud in the execution," the allegation that Ms. Kessler misrepresented the contents of the Shaf Holdings operating agreement is an allegation of this sort, as are the allegations that defendants caused Mr. Schaeffer's signature to appear on the Conflict Waiver, the Schaeffer Holdings operating agreement, the August 10 Agreement, and the February 17 Agreement without Mr. Schaeffer intending to sign them.  (<u>Id.</u> ¶¶ 105, 111, 113, 115.)  <u>See, e.g.</u>, <u>Hetchkop</u>, 116 F.3d at 32 ("Proof that a party secretly substituted one type of document for another is evidence of fraud in the execution."); <u>Mix</u>, 99 A.D.2d at 182-83 ("For example, the claim could be that the signatory signed an instrument different from that which he understood it to be.").  These allegations, along with the alternative allegations that defendants forged the signatures, go to the initial validity of the agreements, not to a claim for damages based on detrimental reliance.  <u>See</u> <u>Orlosky v. Empire Sec. Sys., Inc.</u>, 230 A.D.2d 401, 403-04 (3d Dep't 1997) ("Under State law and general contract law, a forged signature renders a contract void <u>ab</u> <u>initio</u>.").  Although they are appropriately pleaded in pursuit of a declaration of invalidity, these allegations do not state a common-law fraud claim for damages.

Nor does the allegation that the defendants concealed the existence of the agreements from Mr. Schaeffer transform fraud in the execution into common-law fraud.  (<u>Id.</u> ¶¶ 106, 112, 114, 116.)  The complaint alleges that Mr. Schaeffer would not have employed Ms. Kessler or retained Mr. Kessler as an attorney had he known of their faithless behavior (<u>id.</u> ¶¶ 118, 119), but the argument that this detrimental reliance makes out a claim for common-law fraud proves too much.  Taken to its logical endpoint, it would mean that any breach of duty by

an employee or attorney would also constitute common-law fraud unless the employee came forward and confessed his misdeeds to his employer so that he might be dismissed.  While presenting the signatures in question to a third party as if they were authentic might constitute common-law fraud, it would be a fraud on the third party, not on Mr. Schaeffer.

      b.  Construed As Pleading Fraud In The Execution, Plaintiffs' Fraud Allegations
          State A Claim For Relief With Particularity Under Rule 9(b)

Although the Fourth Claim does not state a common-law fraud claim for damages, the fraud allegations in the complaint do state a claim for fraud in the execution with regard to each allegedly fraudulent agreement.  The available relief for this claim, if established, would be a declaration that the fraudulent agreements are void ab initio.

The fraud claim, so construed, is not impermissibly duplicative of either the duty-of-loyalty claim against Ms. Kessler or the malpractice claim against Mr. Kessler.  This is because fraud in the execution is a defense to enforcement of a contract, not a tort claim and because, as noted, the duty-of-loyalty claim is not a contract claim.  Moreover, with regard the malpractice claim, plaintiffs do not allege that Mr. Kessler committed legal malpractice and then concealed it through fraud; rather, they allege that Mr. Kessler's purported representation of Mr. Schaefffer's interests was a fraud from the outset.  See Mitschele v. Schultz, 36 A.D.3d 249, 254 (1st Dep't 2006) (holding that where "defendants are alleged to have perpetrated a fraud on plaintiff from the time they were retained to provide accounting services" by failing to disclose a conflict of interest, the plaintiff's fraud claim was independent of her time-barred malpractice claim).

The fraud allegations also satisfy Rule 9(b), Fed. R. Civ. P.  As discussed below, the Court concludes that for each of the five fraudulent documents alleged in the complaint, the allegations adequately plead "the circumstances constituting fraud," Rule 9(b), Fed. R. Civ. P.,

14

such that "[a] thorough reading of the Complaint puts the defendant on fair notice both as to the claims and the factual ground upon which the claims are based."  <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1058 (2d Cir. 1993) (applying Rule 9(b)).[2]

<u>First</u>, the complaint alleges that "Mr. Kessler drafted the conflict waiver letter," and that "[w]ithout Mr. Schaeffer's knowledge or authority, the Kesslers forged or caused Mr. Schaeffer's signature to appear on the document."  (Compl. ¶ 105.)  It further alleges that differences between the Retainer Agreement (Compl. Ex. A), which is signed "Richard Schaeffer" and indicates that it was dated March 20, 2012, and the Conflict Waiver (Compl. Ex. B), which is signed "Richard M. Schaeffer" and does not include a date for the signature, suggest that "Mr. Schaeffer's signature on the conflict waiver letter was forged by the Kesslers . . . ." (Compl. ¶ 33.)  Plaintiffs also allege that the Kesslers failed to disclose the existence of the forged Conflict Waiver and that Mr. Schaeffer was not aware of it until he discovered it in his files after Ms. Kessler resigned.  (<u>Id.</u> ¶¶ 34, 106.)  These allegations allege fraud in the execution or forgery with adequate particularity.

<u>Second</u> and <u>third</u>, the complaint alleges that "the Kesslers" forged or fraudulently caused Mr. Schaeffer's signature to appear on both the February 17 Agreement and the August 10 Agreement without his authorization.  (<u>Id.</u> ¶¶ 113, 115.)  Plaintiffs do not allege when the documents were created or when Mr. Schaeffer's signature was forged or fraudulently obtained, stating that Mr. Schaeffer first became aware of the agreements when Ms. Kessler filed the State

---

[2] The Court assumes that fraud in the execution is subject to Rule 9(b).  <u>See, e.g.</u>, <u>Fed. Deposit Ins. Corp. v. R-C Mktg. & Leasing, Inc.</u>, 714 F. Supp. 1535, 1542-43 (D. Minn. 1989) (fraud in the execution subject to Rule 9(b)).  Some of the ordinary Rule 9(b) standards, for example, specifying the "statements" and the "speaker," do not correspond to the nature of the alleged fraud here.  In assessing whether the complaint alleges the circumstances constituting fraud with particularity, the Court will therefore bear in mind that "'[t]he primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.'"  <u>Novak v. Kasaks</u>, 216 F.3d 300, 314 (2d Cir. 2000) (quoting <u>Ross v. Bolton</u>, 904 F.2d 819, 823 (2d Cir. 1990)).

Court Action, which attached both as exhibits.  (Id. ¶¶ 36, 38, 39.)  Plaintiffs do allege that the signature line of the February 17 Agreement appears on a separate page and that, upon information and belief, "it was intentionally separated from the rest of the agreement so that the Kesslers could more easily fraudulently cause Mr. Schaeffer's signature to appear on the agreement."  (Id. ¶ 35.)  The complaint also alleges that "the Kesslers intentionally failed to disclose to Mr. Schaeffer the existence of" either agreement.  (Id. ¶¶ 114, 116.)  These allegations are sufficient to plead fraud in the execution or forgery with particularity in connection with the February 17 Agreement and the August 10 Agreement.[3]

Fourth, the complaint alleges that "Mr. Kessler intentionally drafted the Shaf Holdings operating agreement in contravention of Mr. Schaeffer's instructions"—granting Ms. Kessler a 10% interest instead of a 9% interest—and that "Ms. Kessler knowingly made fraudulent misrepresentations and omissions of material fact" when she "led [Mr. Schaeffer] to believe that the document had been properly drafted" and failed to "disclose that the document was drafted in a manner that provided her with a larger interest in Shaf Holdings than Mr. Schaeffer ever intended."  (Id. ¶¶ 107, 108.)  Mr. Shaeffer is alleged to have signed the Shaf Holdings operating agreement in reliance on Ms. Kessler's representations.  (Id. ¶ 109.)  These allegations plead fraud in the execution in connection with the Shaf Holdings operating agreement with sufficient particularity.  Although the complaint does not specify what statements, if any, Ms. Kessler made to mislead Mr. Schaeffer as to the contents of the

---

[3] The rule in the this Circuit is that allegations of fraud "may be based on information and belief when facts are peculiarly within the opposing party's knowledge," so long as the complaint can "adduce specific facts supporting a strong inference of fraud . . . ."  Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).  Here, the exact means of forging or fraudulently obtaining Mr. Schaeffer's signature would be peculiarly within defendants' knowledge, but the complaint's factual allegations raise a strong inference of fraud and plaintiffs' limited use of pleading on information and belief is therefore permissible.  Specifically, the complaint alleges facts suggesting that both defendants had the motive of obtaining interests in Mr. Schaeffer's entities for Ms. Kessler and, as Mr. Schaeffer's trusted assistant and attorney, a unique opportunity to do so.

document, her alleged failure to tell Mr. Schaeffer that the document misstated and overstated her interests in Shaf Holdings is, in the context of a fiduciary relationship, sufficient to state a claim.  See Banque Arabe, 57 F.3d at 153.  By the same token, "[w]hile the law presumes that a person who executes a written contract knows its contents, such rule is not applied where a party signing is misled into believing that the writing correctly embodies the oral agreement by one with whom a relation of trust and confidence obtains."  Wiesenthal v. Krane, 226 A.D. 82, 85 (1st Dep't 1929); see Sorenson, 52 A.D.3d at 266.  Thus, the complaint plausibly alleges that Mr. Schaeffer was not negligent in failing to read the document before signing it.

       Fifth, the complaint alleges that "[u]pon information and belief, Mr. Kessler intentionally drafted the Schaeffer Holdings operating agreement in contravention of Mr. Schaeffer's instructions" in that, among other things, the document failed to provide equity interests to the Schaeffer family trusts as Mr. Kessler requested and instead granted Ms. Kessler a 9% interest in Schaeffer Holdings, even though Mr. Schaeffer had rejected a proposal to grant her such an interest.  (Id. ¶ 110.)  The complaint further alleges that "[w]ithout Mr. Schaeffer's knowledge or authorization, the Kesslers caused Mr. Schaeffer's signature to be forged and/or fraudulently placed on the Schaeffer Holdings operating agreement," and that "[t]he Kesslers intentionally failed to disclose to Mr. Schaeffer the existence of the fraudulent Schaeffer Holdings operating agreement."  (Id. ¶¶ 111, 112; see also id. ¶¶47-50.)  These allegations, too, are adequate, in the context of the complaint as a whole, to plead fraud in the execution or forgery with particularity.  Although the allegations are made on information and belief, the complaint sets forth the reasons for that belief: that the Schaeffer Holdings operating agreement was drafted in contravention of Mr. Schaeffer's instructions by Mr. Kessler; that this was done in such a way so as to benefit his wife; and that, notwithstanding Mr. Schaeffer's refusal to sign the

document, it appears to have his signature.  At the pleading stage, this is sufficient, in light of the

complaint as whole.

   VI. <u>Declaratory Judgment Act (Sixth Claim)</u>

    Finally, Ms. Kessler argues that plaintiffs' Sixth Claim, for a declaratory

judgment, is duplicative of the duty-of-loyalty claim.  Although the substance of the dispute

among the parties is governed by state law, the availability of declaratory relief in this Court is

governed by the Declaratory Judgment Act.   28 U.S.C. § 2201; <u>accord</u> <u>Am. Standard, Inc. v.</u>

<u>Oakfabco, Inc.</u>, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007).  The Declaratory Judgment Act states

in relevant part as follows:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought.

28 U.S.C. § 2201(a); <u>see</u> <u>also</u> Rule 57, Fed. R. Civ. P. ("The existence of another adequate

remedy does not preclude a declaratory judgment that is otherwise appropriate.")  The grant of

declaratory relief by a district court is discretionary and, "[i]n order to decide whether to

entertain an action for declaratory judgment," the Court asks two questions: "(1) whether the

judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2)

whether a judgment would finalize the controversy and offer relief from uncertainty."  <u>Duane</u>

<u>Reade, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 411 F.3d 384, 389 (2d Cir. 2005).

    Here, the Sixth Claim seeks a declaration that "Ms. Kessler has no legal or

equitable interest in Shaf Holdings, Schaeffer Holdings, or Liquid; and that the Shaf Holdings

operating agreement, Schaeffer Holdings operating agreement, August 10, 2011 agreement, and

February 17, 2012 agreement are unenforceable by Ms. Kessler."  (Compl. ¶ 144.)  Taking the

factual allegations in the complaint as true, the Court concludes, at this early stage of the litigation, that a declaratory judgment may serve to help settle the legal issues involved and finalize the controversy among the parties by establishing whether Ms. Kessler holds any of the disputed interests.

Ms. Kessler contends that such a declaration would merely duplicate the relief sought by the duty-of-loyalty claim, which alleges, among other things, that Ms. Kessler is obligated to disgorge any equity interests in Shaf Holdings, Schaeffer Holdings, and Liquid. (Compl. ¶ 75.)  This argument misses the mark.  A declaratory judgment is not a substantive cause of action, but merely a remedy.  See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950).  For the reasons stated above, the complaint's well-pleaded allegations suggest that the remedy of declaratory relief may be appropriate here, should plaintiffs establish that the agreements in question are not enforceable.  Thus, Ms. Kessler's motion to dismiss the Sixth Claim is denied.

VII.   Mr. Kessler's Request For A Stay Of The Malpractice Claim Is Denied

Finally, Mr. Kessler seeks a stay of the legal malpractice claim against him pending the outcome of the State Court Action.  This request is largely disposed of by observing that, by Order dated March 4, 2013, the Supreme Court stayed the State Court Action pending a determination in this case.  Even if the State Court Action were not stayed, however, this Court would not stay the malpractice claim against Mr. Kessler under the six-factor test set out in Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976).  See Vill. of Westfield v. Welch's, 170 F.3d 116, 120 (2d Cir.1999) (Colorado River applies where federal and state courts exercise concurrent jurisdiction simultaneously).  That is because, among other reasons, neither case is in rem, the federal forum is not inconvenient, and the federal action

19

was filed first.  In light of this Court's duty to exercise jurisdiction, the fact that the dispute is largely governed by state law is not, alone, sufficient reason for this Court to abstain.

Nor is there merit to Mr. Kessler's alternative argument that the malpractice claim should be stayed pending a determination of plaintiffs' request for declaratory relief in this action.  Delaying prosecution of the malpractice claim in this case would not enhance the efficient and orderly prosecution of the case as a whole.

Finally, the Court notes that, contrary to Mr. Kessler's suggestion, the legal malpractice claim against him is ripe for adjudication, even if not all of the possible damages resulting from his alleged malpractice have materialized.  The complaint alleges that Mr. Schaeffer has suffered a concrete harm in that he has been forced to defend the State Court Action; that is sufficient for ripeness.  See Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 371 (S.D.N.Y. 2004).

CONCLUSION

For the reasons set forth above, defendants' motions to dismiss (Dk. No. 15 & Dk. No. 18) are DENIED.  As stated, however, the Court construes the Fourth Claim as a claim for fraud in the execution, not common-law fraud.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        March 20, 2013